UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE VIANET ORTEGA-CORRERA,

v.                          Case No. 8:05-cr-381-T-24MSS
                                 8:07-cv-654-T-24MSS

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court upon Defendant Ortega-Correra's amended motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. cv-4; cr-145) (hereinafter "motion to vacate" or "motion"). Because review "of the motion and the file and records of the case conclusively show that the defendant is entitled to no relief," the Court will not cause notice thereof to be served upon the United States Attorney but shall proceed to address the matter. *See* 28 U.S.C. § 2255.

PROCEDURAL HISTORY

On October 13, 2005, Ortega-Correra pled guilty, without a plea agreement, to 1) conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a), 1903(g) and 1903(j); 21 U.S.C. § 960(b)(B)(ii) (Count One); and 2) possession with intent to distribute five kilograms or more of cocaine while aboard a vessel

subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a) & 1903(g); and 18 U.S.C. § 2; 21 U.S.C. § 960(b)(1)(B)(ii) (Count Two). On January 26, 2006, the Court sentenced Ortega-Correra to one hundred and thirty-five months concurrent sentences as to counts one and two. Judgment was entered that same day.

On February 1, 2006, Ortega-Correra filed a Notice of Appeal. On August 23, 2006, the United States Court of Appeals for the Eleventh Circuit affirmed Ortega-Correra's conviction and sentence in an order that reads, in part

> Jose Vianet Ortega-Correra appeals his 135-month concurrent sentences . . . . First he argues that the district court erred in denying a minor-role reduction, pursuant to U.S.S.G. § 3B1.2, and thereby frustrated Congressional and the Sentencing Commission's intent to give low-level participants in a drug trafficking offense reduced sentences. He also argues that the district court imposed unreasonable 135-month concurrent sentences because it failed to sua sponte consider that he faced a harsher sentence than similarly situated defendants, due to his illegal-alien status.
>
> We find no clear error in the district court's determination that, with the exception of the captain of [sic] vessel, the remaining crew members played equal roles in transporting over 550 kilograms of cocaine, and that Ortega-Correra was equally responsible as the other crew members who helped transport the drugs. Thus, the court did not clearly err in denying the minor-role reduction.[1]
>
> > [1] We likewise reject Ortega-Correra's secondary argument, based on alleged frustration of Congressional and the Sentencing Commission's intent to give low-level participants in drug trafficking offenses lower sentences.
>
> Ortega-Correra also argues that his sentences are unreasonable, and, as grounds, argues for the first time that he was forced, "through no action or fault of his own," into illegal-alien status that will cause him to "face more time in prison than the average offender committing the same crime . . . not [be] entitled to . . . community confinement [at the end of his sentence],. . . remain in prison, and in a higher level of security and restriction than similar offenders." He also argues that his sentences do not comport with the Supreme Court's edict in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in that the district court failed to give

2

"heightened attentiveness" to factors listed in 18 U.S.C. § 3553(a), including whether the sentence was "sufficient but not greater than necessary" and would "avoid unwarranted sentence disparities."

On this record, we do not find the 135-month concurrent sentences unreasonable. First, the court was not required to explicitly consider each § 3553(a) factor, but did consider such factors as the large amount of drugs on the boat, and Ortega-Correra's role as a crew member. See Scott, 426 F.3d at 1329-30; see also,18 U.S.C. § 3553(a)(1)-(2) (factors to be considered include the nature, circumstances, and seriousness of the offense). Ortega-Correra's 135-month sentences were at the low end of the advisory Guidelines range, and significantly less than the statutory-maximum sentence of life imprisonment. See Martinez, 434 F.3d at 1322 (sentence at low end of the range and far below the statutory maximum sentence was not unreasonable).

Moreover, Ortega-Correra's argument, based on his illegal-alien status and raised for the first time on appeal, must also fail. Because the court was not required to discuss each § 3553(a) factor, see Scott, 426 F.3d at 1329-30, it did not plainly err in failing to sua sponte discuss whether Ortega-Correra faced a harsher sentence due to his illegal-alien status. Ortega-Correra's argument, with only vague mention and citation of the Bureau of Prisons' policy statements, simply does not meet his burden of proving plain error or that his sentences are unreasonable. See Barfield, 395 F.3d at 1150; see also Talley, 431 F.3d at 788 (the burden rests with the defendant to prove unreasonableness). Upon review of the record and considered of both parties' briefs, we discern no reversible error. **AFFIRMED**.

(Doc. cr-135).

## PRESENT MOTION TO VACATE

Ortega-Correra signed his original motion to vacate on April 1, 2007. He signed his court-ordered amended motion to vacate on May 14, 2007. The motion to vacate is timely.

## DISCUSSION

Ortega-Correra has raised a number of claims in his narrative motion to vacate:

In an absurd and totally irresponsible rush to reach an end in representation of this Defendant regarding the instant cause at bar, defense counsel wholly coerced and mislead this Defendant to unwarrantly waive Defendant's Constitutional rights and therefrom offer an "open" change of plea of guilty before this court, on or about October 13th, 2005. This

3

Defendant had constantly insisted to defense counsel that this Defendant was innocent of the charges held against his person. Defense counsel: took NO depositions; questions NONE of the Discovery materials as to their inconsistencies and/or accuracies; posed NO inquires [sic] as to why certain admitted actions by the United States coast Guard (hereinafter: (USCG) (and from which this instant cause of action originates) ever occurred; and/or under what specific authority(ies) such acts/actions were so executed. Defense counsel "interviewed" this Defendant (via an interpreter -- whereas this Defendant is wholly illiterate in the English language) exactly two (2) times, at which said meetings defense counsel simply instructed this Defendant that NO defense of any sort existed for the Defendant, and that the best/ONLY course of action for this Defendant was to enter an "open" change of plea -- a pray for the court's mercy. Defense counsel wholly ignored this Defendant's protests of innocence and did nothing more in representation than to instill morbid fear of a Life sentence if the Defendant failed to acquiesce and proceed with an "open change of plea to the court. Defense counsel explicitly instructed this Defendant that it MUS be a change of plea -- or Defendant WOULD get a Life sentence in Federal prison. NO mention or presentation (nor presumably any attempt) regarding ANY plea offer(s) and/or negotiations from/with the prosecution ever occurred.

Defendant was arrested on the High Seas August 31st, 2005. Due to defense counsel's coercive representations to/of this Defendant -- said referenced "open" change of plea to the court was entered and accepted on or about October 14th, 2005. This, just bearly [sic] forty-four (44) days from the Defendant's arrest. This Defendant was therefrom sentenced to One Hundred and thirty-five months in Federal prison on January 26th, 2006.

Defense counsel owns [sic] a constitutional and professional duty to zealously represent and defend any client of said counsel to be the best of counsel's learned ability(ies). Defense counsel IS NOT permitted (by law or by the professional rules of conduct) to directly and knowingly mislead and/or solely use fear tactics in order to gain the Defendant's acquiescence to defense counsel's desires to end said representation. Defense counsel's representation that NO possible affirmative defense existed for this Defendant to proceed with Defendant's NOT GUILTY plea -- was/is in complete contradiction to the facts found in the Discovery materials/record. Even a simply cursory "surface" inspection of the facts found in the Discovery materials -- evidence ample cause to proceed and defend.

Defendant was a LICENSED fisherman working on the fishing vessel MAR PICACO [sic]. This vessel was LICENSED to execute a commercial fishing trip to/for interests in the INDEPENDANT [sic] NATION of Jamaica. This fishing vessel was of Columbian registry and was intercepted by a USCG cutter in INTERNATIONAL waters off the vessel's officially logged

4

destination of Jamaica. The Jamaican flag, as per maritime tradition and custom, was being flown from the MAR PICACO [sic] at the time of this referenced intercept. The Columbian flag was also prominently displayed from the bridge of the vessel, again per maritime tradition/custom, designating the origins of the ship. With NO legal jurisdiction in these waters off Jamaica, the USCG intercepted, detained, boarded, and searched this legally licensed fishing vessel, the MAR PICACO [sic]. Defense counsel failed to ever question the constitutionality /legality of this action by the USCG against a benign foreign vessel legally en route in NON United States waters to a NON United States destination. Furthermore, even if the most absurd reaches of any reasonable belief extended to allow any such High Seas "stop and detention," certainly the resulting action(s) by the USCG (as is evidenced by the Government's admitted and published facts via its Discovery) would have constitutionally/legally PROHIBITED any action(s) against and/or the arrest of this Defendant.

      The Government's stated facts delineate that the USCG personnel "observed 4 persons and 'BALES' of what 'APPEARED' to be 'CONTRABAND' 'ON THE DECK' of the subject fishing vessel." However, there exists NO photographic and/or video evidence to support this position of the Government/USCG. Notwithstanding the absurdity of any alleged and/or suspected "smuggling" being so "out in the open," NOTHING exists on the official record as to why these alleged "BALES" alleged to be showing "ON DECK" would or could "APPEAR" to be "CONTRABAND," merely by a distant sighting on the open seas. NOTHING, no evidence nor any reasonably logical conclusion supports this referenced action by the United States Government/USCG -- outside of a possible prejudice due to the subject vessel's Columbian registry. Simply and solely because there were allegedly "BALES" in full view on a COLUMBIAN vessel DOES NOT constitute ANY probable and/or reasonable belief and/or cause to automatically presume these "observed bales" were and/or would be "CONTRABAND." This factual interception, detention, boarding, search and seizure is tantamount to High Seas piracy -- if not an outright act of war by the USCG against the independent nation of Columbia. NO notice was given to Columbian and/or Jamaican authorities that the USCG was to act as they so proceeded to do. Moreover, even beyond these unlawful acts of the USCG, NO photographic and/or video evidence exists of the eventual inspection of these alleged "observed bales" containing "apparent contraband." There is good reason for this lack of physical/real evidence to support the actions of the Government/USCA. As the Defendant explained to defense counsel -- NO "BALES" existed "ON DECK" of this subject vessel. In fact, the stipulated "BALES" were nothing more than fishing nets and professional fishing gear properly folded/stacked where and for immediate use of the professional fishing crew. Defendant further instructed defense counsel that the USCG NEVER even gave more than a cursory

inspection of the "alleged BALES."  Additionally, the USCG's position that "BALES" containing the cocaine of subject in this instant cause, were openly "ON DECK" and therefrom necessarily exposed to the elements and the seawater of the Caribbean -- is wholly illogical and definitively unreasonable in the extreme.  Defendant instructed defense counsel that the USCA went "below decks" and there discovered the alleged subject cocaine IN A SECURED FREEZER. Defendant instructed defense counsel that Defendant NEVER owned ANY knowledge of this alleged cocaine -- nor EVER saw anything more than the USCG's removal of some wrapped "blocks/packages" from below decks of the MAR PICACO [sic].  Defendant instructed defense counsel that as far as the Defendant knew -- NONE of the subject vessel's crew knew ANYTHING about this alleged cocaine -- that it had to be the Captain of the subject vessel ALONE who owned such knowledge -- whereas the referenced freezer WAS a secured/locked area.  Simple (and necessary) photographic/video evidence -- if properly executed by the government/USCG -- would have verified these hereto SWORN facts. However, the USCG "studiously" failed to use any such simple and (police) routine techniques to ensure its actions in waters NOT under United States jurisdiction were proper and justified process and procedure.

 Defense counsel wholly failed to address these facts so presented by the Defendant.  Such a failure to act on the Defendant's behalf is an egregious error in representation -- especially so in light of defense counsel's instruction to the Defendant that NO affirmative defense(s) existed for the Defendant to proceed other than the referenced "open" change of plea to the court.  Defense counsel owned the knowledge that the Defendant had absolutely NO knowledge of the alleged cocaine. Additionally, defense counsel owned the basic knowledge that the simple removal of "something" by the USCG from "below decks" of the referenced subject fishing vessel DOES NOT give rise to ANY reasonable knowledge as to the contents of these seized "packages." Defense counsel wholly failed to investigate these hereto SWORN facts presented to said counsel. Defense counsel took NO depositions of the parties involved to verify or contradict the Defendant's hereto SWORN testimony of the USCG's actions and this Defendant's professed innocence.  Defense counsel instead proceeded solely upon an uninformed, unquestioning belief that the Government did NO wrong. Defense counsel made NO attempt and gave NO consideration in filing any motion to suppress based upon illegal search and seizure.  Absent ANY evidence contrary to the Defendant's hereto SWORN statements -- there is/would have been a more than reasonable expectation that any such referenced motion to suppress would have been so granted. This being said, the Government's instant cause would have been wholly negated therefrom -- and NO criminal cause would have proceeded against this Defendant.

The Government's entire case against this Defendant rests solely upon two (2) factors: (1) that the Government's actions by and through the USCG were constitutionally legal; & (2) that the Captain of the referenced subject seized fishing vessel gave 5K1.1 statements that the entire crew -- the Defendant included therein -- were part of this cocaine operation eventually discovered. In this regard, Defense counsel should have properly put forth a defense that in the bare minimum when inspection by the USCG of the "on deck bales apparently containing contraband," not only DID NOT present ANY such "CONTRABAND" -- but that when such reveled [sic] "contraband" did not exist there -- same distinctly determined that the USCG's right to ANY further search ENDED. Quite obviously, when the USCG's stated "cause" to intercept, detain, board, and search this referenced subject vessel outside the immediate jurisdiction and interests of the United States was subsequently discovered to be unfounded and wholly false – the USCG owned the absolute duty and responsibility to deboard and allow the subject vessel to go on its way. Any reasonably competent defense motion would have owned a compelling and more than reasonable -- probable -- expectation of being granted in the defense's favor. Thus -- a component of an affirmative defense denied this Defendant by defense counsel.

Such misleading instruction by defense counsel that NO defense existed for the Defendant quite possibly raise [sic] to the level of fraud -- but most certainly is an explicit example of actions far below any acceptable and/or reasonable standard of professional representation. The Defendant would NEVER have entered any waiver(s) of constitutional rights(s) and thus offered a change of plea, had this Defendant been properly instructed that any such an affirmative defense existed in the Defendant's cause. The resulting fatal prejudice of a conviction and sentence of incarceration that certainly otherwise would own a likelihood of never happening -- is both factual and per se. Such a deficiency in representation by defense counsel is so egregious that this most honorable court should well be compelled to grant this Defendant's requested relief to enter an order vacating the instant judgment, conviction, and sentence imposed against this Defendant, forthwith.

Additionally, defense counsel failed to make any official protests and/or motion to the court decrying the Government's failure to succeed in allowing the Defendant his right (s) to CONTACT the Columbian Consulate. Government officials allowed only ONE alleged "FAILED" attempt made by a Government agent in the middle of the night with the resulting instructions that "no answer" was the end result of this alleged attempt -- solely executed by Government agents. Even if the extremely remote possibility exists that "no answer" would ever occur in ANY foreign Consulate/Embassy -- in the minimum, a message would have [sic] able to be left. This action -- or better said, lack thereof by the Government officials in this regard -- is legally a

violation of the Defendant's rights under the Vienna convention Articles (1947). Moreover, defense counsel's failure to contact the Columbia Consulate on behalf of the Defendant and request copies of the subject vessel's licenses, as well as the Defendant's -- compounded by the failure to even attempt obtaining the Defendant's constant past licenses WITH THIS SAME VESSEL as a professional fisherman -- as well as the failure to obtain any/all financial records, criminal history records, etc. of the Defendant from the Columbian Government to further evidence the Defendant's good character and probable likelihood of innocence -- wholly failed to gain the evidence needed to show the Defendant as a hard working and simple fisherman with NO evidence existing owning any show of financial equities beyond those of the norm in the Defendant's profession. Thus, this failure by defense counsel effectively eliminated any hope of mounting a proper defense to counteract the self-serving statements of the "5K1.1 Captain."

Such a failure by defense counsel falls well below any acceptable and reasonable standard of professional representation. Again, had the Defendant known that the defense counsel could have/should have mounted such a defense, but instead denied any such defense existed -- Defendant would never have entered any change of plea in this instant cause. The resulting fatal prejudice and injury of a conviction and sentence of incarceration that would not otherwise exist, is both factual and per se. Such a deficiency in representation by defense counsel is so egregious that this most honorable court should well be compelled to gant this Defendant's requested relief to enter an order vacating the instant judgment, conviction, and sentence imposed against this Defendant, forthwith,

Furthermore, defense counsel failed to ever question and/or raise motion against the fact that an affirmative defense existed in the prima facie fact that NO nexus exists in this instant cause of action between the alleged recovered cocaine and the United States at all. In fact, even the Government's main witness -- the "5K1.1 Captain" -- officially stated that the alleged subject cocaine was NEVER BOUND FOR THE United States, but indeed was to be delivered to unknown people in a meeting near Jamaica. Defense counsel wholly failed to instruct the Defendant that any such affirmative defense existed -- in fact (and as already stated) instructing this Defendant that NO such defense existed in this instant cause of action.

Such a failure by defense counsel falls well below any reasonable standard of professional representation. Once more, had this Defendant known that ANY such a defense was available to the defense of his cause -- NO change of plea would have ever occurred. The resulting fatal prejudice and injury of a conviction and sentence of incarceration that would not otherwise exist, is both factual and per se. Such a deficiency in representation by defense counsel is so egregious that this most honorable

court should well be compelled to grant this Defendant's requested relief to enter an order vacating the instant judgment, conviction, and sentence imposed against this Defendant, forthwith.

Each instance of ineffective assistance of counsel shown above easily warrants this court to grant the requested relief of the Defendant inherent in this instant motion -- but certainly, the cumulative failures by defense counsel should not be allowed to stand -- especially with the resultant fatal and physical prejudice to this Columbian citizen's criminal conviction and incarceration in a nation this Defendant NEVER intended to EVER be. Defense counsel has the absolute duty and responsibility to zealously defend and represent the client.  Here, defense counsel failed to even lend a minimum of professional defense representation to this Defendant.  As such, this most honorable court should be so moved to correct such egregious errors and violations of due process by and through issuing an immediate order granting the Defendant's requested relief.

It should also be vitally important here to note -- with the SWORN facts herein -- that subsequent to the referenced intercept, detention, boarding, search and seizure of the subject vessel -- the USCG held the Defendant and crew on the USCG cutter for well over eight (8) hours -- whereupon, and before the Defendant's (and whole crew's) eyes -- the USCG scuttled by fire the vessel MAR PICACO [sic] -- absent any reason or justifiable cause, and presumably, illegally.  This referenced destruction of the vessel essentially similarly destroyed all possible exculpable evidence aboard that could have been used in this Defendant's defense (i.e. professional licenses, etc.) -- as well as all personal possessions aboard.

These actions by the USCG -- and thus the United States Government -- are beyond any reasonable belief of any reasonable person -- especially when occurring in waters NOT of United States jurisdiction and upon a properly licensed foreign vessel en route to a foreign port of call.

The Defendant contends herein that this court, now having been apprised of these acts by the USCG in the name of the United States -- should be absolutely compelled to not only grant this Defendant's requested relief -- but to issue a formal statement condemning any such acts by ANY representative agent(s) of this nation upon ANYONE, let alone those people(s) and property(ies) of any other nation -- especially so when outside the (even extended) boundaries of the United States' jurisdiction.

DISCUSSION

**A. Ineffective Assistance of Counsel Claims**

Ortega-Correra claims that defense counsel coerced and mislead him into waiving his constitutional rights and entering an "open" guilty plea. (Doc. cv-4 at p. 4). He alleges that defense counsel told him that there was no possible affirmative defense; Ortega-Correra claims that "the discovery materials/record" contradict defense counsel's statement. It appears that Ortega-Correra's reference to discovery materials includes the allegation that no bales [of cocaine] existed on the deck of the "Mar Picao," and that Ortega-Correra was a licensed fisherman who knew nothing about the cocaine stored in the locked freezer below deck.

Ortega-Correra claims that defense counsel never questioned the legality of the Coast Guard's boarding the "Mar Picao," and that defense counsel did not file a motion to suppress the evidence "based upon illegal search and seizure." Ortega-Correra also contends that defense counsel was ineffective because he failed to make any official protests about Ortega-Correra's inability to contact the Columbia embassy under the Vienna Convention. He faults counsel for failing to question this Court's jurisdiction over Ortega-Correra.

Standard for Ineffective Assistance of Counsel Claims

To prevail on his claims of ineffective assistance of counsel, Ortega-Correra must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Ortega-Correra to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

10

However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. For the following reasons, Ortega-Correra cannot meet either prong of the *Strickland* standard and therefore, cannot prevail on any of his ineffective assistance of counsel claims.

At the October 13, 2005, change of plea hearing before the United States Magistrate Judge, Ortega-Correra stated, under oath, that he was satisfied with the representation defense counsel had provided; that he had not asked defense counsel to do anything for him that was done in an improper manner; and that he had not had any problems, or issues with his defense counsel's representation. (Doc. cr-88 at p. 6).

When the Magistrate Judge asked if a plea agreement had been presented to Ortega-Correra, defense counsel Anne Borghetti explained that there was a plea agreement, but that Ortega-Correra chose not to sign the plea agreement because he wanted to reserve his right to appeal. (Doc. cr-88 at p. 6). Attorney Borghetti stated that "Basically nothing was given to us in the plea agreement." She confirmed that the plea agreement had the standard three levels downward adjustment, a low end sentence recommendation and a safety valve agreement. (Doc. cr-88 at pp. 6-7). Attorney Borghetti stated that Ortega-Correra chose not to enter into the plea agreement. (Doc. cr-88 at p. 7).

Ortega-Correra confirmed that he recalled the proposed plea agreement, that he had decided not to sign the document, and that he was satisfied with the decision. Ortega-Correra stated that he had spoken "fully" with defense counsel about the plea agreement. (Doc. cr-88 at p. 7-8). The Magistrate Judge explained the two charges against Ortega-Correra:

11

> Count 1 charges you with conspiracy to possess with intent to distribute five or more kilograms of cocaine while aboard a vessel subject to the jurisdiction of the United States.
>
> Count 2 charges you with actual possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States.

(Doc. cr-88 at p. 8). Ortega-Correra said that he understood the two charges against him. (Doc. cr-88 at p. 8). Ortega-Correra confirmed that he understood the rights he would be giving up by entering a plea and the penalties he would be facing: a mandatory minimum term of incarceration of ten years and a maximum of life for each offense. (Doc. cr-88 at p. 9).

The Magistrate Judge explained to Ortega-Correra that, by pleading guilty, Ortega-Correra would be giving up his right to a jury trial. Ortega-Correra stated that he waived his right to a jury trial because he did not want to go to trial. Ortega-Correra said, "I want to plead guilty because they caught me. I want to plead guilty because they caught me with the evidence." (Doc. cr-88 at pp. 12-13). Ortega-Correra swore that no one had promised him anything to plead guilty and that no one had threatened him "to get you [Ortega-Correra] to plead guilty." (Doc. cr-88 at p. 13).

The Magistrate Judge had the prosecutor read the underlying facts of the charges to which Ortega-Correra was pleading guilty:

> Ms. Croff: Thank you, Your Honor.
>
> Were this case to go the [sic] trial, the United States would be able to prove the following facts beyond a reasonable doubt:
>
> On or about August 28, 2005, the defendant and three other crew members were aboard the Columbian registered fishing vessel, Mar Picao when intercepted by the United States Coast Guard in the Caribbean Sea.

>    The defendant was to be paid for his part in an unlawful agreement to transport five or more kilograms of cocaine for delivery to others.
>
>    During the encounter the Coast Guard seized approximately 350 kilograms of cocaine from the vessel. The Government of Columbia consented to enforcement of the United States law in regard to the vessel and crew.
>
>    The defendant and his three crew members were detained by the Coast Guard and first entered the United States in the Middle district of Florida.

(Doc. cr-88 at pp. 15-16).

Ortega-Correra confirmed that the facts were true and that he did not have any disagreement or dispute about the facts. He agreed that the Government would be able to prove the elements of the charges to which Ortega-Correra was pleading guilty and that the facts the Government would be able to prove were sufficient to satisfy the legal elements of each offense. (Doc. cr-88 at p. 16).

Then, Ortega-Correra pled guilty to both counts, and stated that he was pleading guilty because he was guilty. (Doc. cr-88 at p. 18). The Magistrate Judge found that Ortega-Correra was competent and that his plea was "knowing, intelligent and voluntary" and "adequately supported by the facts such that each of the essential elements of this offense can be met." (Doc. cr-88 at p. 19).

Ortega-Correra has not alleged any facts to demonstrate that counsel was ineffective. Ortega-Correra chose to plead guilty without any plea agreement, and he stated to the Court that he was pleading guilty because he was guilty.

Ortega-Correra swore, in open court, that he was satisfied with his defense counsel. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984)

("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion. . . .include credible, valid reasons why a departure from those earlier contradictory statements is now justified.")

Furthermore, it is well-established state and federal law that guilty pleas waive all but jurisdictional claims up to the time of the plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (holding that a guilty plea represents a break in the chain of events which has preceded it in the criminal process); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991); *Parker v. State*, 603 So.2d 616 (Fla. 1st DCA 1992); *Dean v. State*, 580 So.2d 808, 809 (Fla. 3d DCA 1991) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (finding that a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial)). This waiver includes constitutional claims. *Wilson v. United States*, 962 F.2d 996 (11th Cir.1992) (pre-plea ineffectiveness waived); *Dermota v. United States*, 895 F.2d 1324 (11th Cir.) (double jeopardy claim waived), *cert. denied*, 498 U.S. 837 (1990). Moreover, guilty pleas foreclose most claims from collateral attack. *See United States v. Broce*, 488 U.S. 563, 569 (1989).

Ortega-Correra waived all non-jurisdictional claims relative to his attorney's actions prior to Ortega-Correra's entering a voluntary guilty plea. *See Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir.1993) (finding that "[o]nce a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained."); *Brady v. United States*, 397 U.S. 742, 757-58 (1970) (guilty plea waived defendant's right to challenge constitutionality of federal kidnaping statute); *United States v. Martinez*, 69 F.3d 1215, 1224

(1st Cir.1995) (guilty plea waived right to challenge drug conspiracy statute as unconstitutionally vague). *See Norris v. McDonough*, 2007 WL 1655617 at *5 (M.D. Fla. June 6, 2007).

**Vienna Convention Claim**

Ortega-Correra contends that his defense counsel did not make any official protests and/or motion to the court "decrying the Government's failure to succeed in allowing the Defendant his right(s) to contact the Columbian consulate." He alleges that if he had contacted the Columbian Consulate, the consul could have furnished Ortega-Correra's license as a fisherman along with his financial records, criminal history records, and other records as evidence of Ortega-Correra's "good character." He claims that the license and records would show that he was a simple fisherman and that counsel's failure to obtain Ortega-Correra's past records "effectively eliminated any hope of mounting a proper defense to counteract the self-serving statements of the '5K1.1 captain.' " He also claims that defense counsel told him that the defense of Ortega-Correra's being a simple, hardworking fisherman, with no criminal intent to distribute drugs was not viable.

Ortega-Correra has not shown that he was prejudiced because his defense counsel did not protest the Government's alleged failure to allow Ortega-Correra more than one attempt at reaching the Columbian Consulate. The Vienna Convention does not prescribe specific remedies for violations of Article 36, and does not guarantee that the consulate would have provided the records, even had Ortega-Correra contacted the consulate.

Even if this Court were to assume that the Vienna Convention created an individually enforceable right, an individual claiming a violation of the Convention must show prejudice to prevail on his claim. *See Medellin v. Dretke*, 544 U.S. at 665 n.3 (citing and quoting

15

*Breard v. Greene*, 523 U.S. 371, 375-77 (1998) ("a successful Vienna Convention claimant likely must demonstrate prejudice"); *United States v. Cordoba-Mosquera,* 212 F.3d 1194, 1196 (11th Cir. 2000); *United States v. Duarte-Acero*, 132 F.Supp.2d 1036 (S.D. Fla. 2001), *aff'd,* 296 F.3d 1277 (11th Cir.2002), *cert. denied*, 537 U.S. 1038 (2002); *Ortiz v. United States*, 2005 WL 2129191, at *8 (M.D. Fla. Sept. 2, 2005) (The Eleventh Circuit has declined to specifically find that the Vienna Convention creates a private cause of action enforceable by individuals, but has held that even if it does, no remedy is available absent a showing of prejudice); *See also United States v. Rios Balderrama*, 2004 WL 2595940, at *5 (W.D. Tex. Nov.12, 2004) (defendant failed to show prejudice from alleged violation of Vienna Convention); *Deoca v. United States*, 2004 WL 96741, at *6 (D. Del. Jan.16, 2004) (violation of Vienna Convention not grounds for federal habeas relief if petitioner does not show how alleged violation affected plea agreement); *Hernandez v. United States*, 280 F.Supp.2d 118, 124-25 (S.D. N.Y. 2003) (petitioner must explain how consultation with consulate would have changed actions that he took in the case or altered the outcome of the case in some way).

Ortega-Correra has not met the *Strickland* prejudice prong because he has not shown there was a reasonable probability that, but for defense counsel's actions in failing to protest the Government's allowing Ortega-Correra only one attempt to reach the Columbian consulate, the result of his criminal proceeding would have been different, especially when Ortega-Correra pled guilty *because he was guilty*.

**B. Jurisdictional Claims**

Ortega-Correra contends that the United States Coast Guard had no jurisdiction over him in the "waters off Jamaica." Ortega-Correra pled guilty and agreed that he was

16

aboard a vessel <u>subject to the jurisdiction of the United States</u> when the crimes occurred. The United States' jurisdiction was based on the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 1903(a),(g), and (j).

The Piracies and Felonies Clause empowers Congress "To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. Art. I, § 8, cl.10. In enacting the MDLEA, Congress found and declared these things: trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned. Moreover, such trafficking presents a specific threat to the security and societal well-being of the United States. 46 U.S.C. app. § 1902. The MDLEA provides, in relevant part, that "[i]t is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. app § 1903(a). A "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. App. § 1903(c)(1)(A).

The MDLEA specifically provides that "Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." *United States v. Madera-Lopez*, 190 Fed. Appx. 832 (11th Cir. 2006) (citing 46 U.S.C. App. § 1903(f))). The Eleventh Circuit has rejected constitutional challenges to the MDLEA. *See United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir.2003) (rejecting argument that MDLEA is unconstitutional because the conduct at issue lacks nexus to United States); *United States v. Mena*, 863 F.2d 1522, 1527 (11th Cir.1989) (rejecting a facial challenge to the MDLEA based on a lack of a "meaningful relationship" to the United

States); *United States v. Tinoco*, 304 F.3d 1088, 1110 n. 21 (11th Cir.2002) (rejecting *United States v. Gaudin*, 515 U.S. 506 (1995) due process challenge to provision in MDLEA, 46 U.S.C. App. § 1903(f), which provides that "[a]ll jurisdictional issues arising under [the MDLEA] are preliminary questions of law to be determined solely by the trial judge" ).Under the MDLEA, the United States had jurisdiction over the Mar Picao and over Ortega-Correra, and Ortega-Correra's claim has no merit.

## C. Additional Claims

Ortega-Correra's section 2255 motion to vacate is lengthy and rambling. However, the Court has considered all claims raised by Ortega-Correra and none of his claims have merit.

Accordingly, the Court orders:

That Ortega-Correra's 28 U.S.C. § 2255 motion to vacate (Doc. cv-4; cr-145) is denied. The Clerk is directed to enter judgment against Ortega-Correra in the civil case and to close that case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"

*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

    ORDERED at Tampa, Florida, on August 6, 2007.

*[signature]*
SUSAN C. BUCKLEW
United States District Judge

AUSA: James C. Preston, Jr.
Jose Vianet Ortega-Correra